**McKENZIE CONST. CO. v. CITY OF SAN ANTONIO et al.**

**No. 8801.**

Court of Civil Appeals of Texas. San Antonio.

April 20, 1932.

Rehearing Denied May 25, 1932.

Dodson & Ezell, of San Antonio, and Kleberg & Eckhardt and H. R. Sutherland, all of Corpus Christi, for appellant.

Templeton, Brooks, Napier & Brown, of San Antonio, Boone & Raymer and Tarlton & Lowe, all of Corpus Christi, and T. D. Cobbs, Jr., of San Antonio, for appellees.

POLK, Special Associate Judge.

On October 22, 1923, the commissioners of the city of San Antonio, by ordinance duly enacted, ordered an election to be held within said city for the purpose of submitting to its qualified taxpaying voters, among others, the proposition of borrowing money on the credit of the city and issuing bonds therefor in the total principal sum of $2,800,000, to be expended for the purpose "of improving the San Antonio River, San Pedro and Alazan Creeks,

by widening, deepening, altering, changing and damming the channels thereof and constructing levees and walls along and near the same, and building dams, dykes and reservoirs at and near the headwaters and the water sheds of said river and creeks and tributaries thereof, all in a permanent manner, so as to prevent or ameliorate flood conditions and protect the public health and safety, and to acquire any lands and other property necessary therefor; said improvements to be constructed being the widening, deepening, altering, changing and damming of the channels of the San Antonio River, San Pedro and Alazan Creeks, and constructing levees and walls along and near the same, and building dams, dykes and reservoirs at and near the headwaters and the water sheds of said river and creeks and tributaries thereof, all in a permanent manner and acquiring any lands and other property necessary therefor."

This move was prompted by a then recent flood of the San Antonio river, still fresh in the memories of the citizens, that had wrought great disaster in the city. On December 4, 1923, the election was held pursuant to said order and the proposition carried, whereupon, on December 10, 1923, the city commissioners duly enacted an ordinance carrying into effect the will of the voters; said ordinance providing for the borrowing of the money on the credit of the city, the issuance of the bonds for the purposes above set forth in quotations, to be denominated "Flood Prevention" bonds, the printing of the bonds, to mature serially within a period of forty years; further providing that "the proceeds on said bonds when sold shall be deposited with the Depository of the City and used under the direction of the City Commissioners to provide for the construction of the permanent public improvements and purposes as hereinabove set forth," and further levying a tax for the year 1923 and succeeding years for the purpose of paying the interest on said bonds and to provide a sinking fund to pay the same when matured. The bonds were subsequently sold, the city receiving therefor in principal, premium, and accrued interest the sum of $2,918,128.33.

Thereafter the city caused to be prepared plans and specifications for the construction of a concrete dam across Olmos creek, to be known as the "Olmos Creek Detention Dam," and thereupon advertised for bids for the furnishing of estimated quantities of labor and material, and all machinery and equipment necessary to construct said dam. Bids were required to be submitted on a printed form of proposal which was bound up with and attached to a copy of the advertisement, instructions to bidders, form of bond and contract, conditions of the contract, specifications, and referring to and making the plans a part thereof, all of which were prepared and furnished by the city.

It is proper to here note that Olmos creek is tributary to the San Antonio river, flowing into said river in the vicinity of Brackenridge Park, which park, is in the city. Appellant submitted a proposal in response to said advertisement, and on July 28, 1925, the city commissioners met with a committee of San Antonio citizens to consider the proposals submitted. Upon motion of Dr. Frederick Terrell, chairman of the Citizens' Committee, the committee recommended that "the contract for constructing the dam be awarded to McKenzie Construction Company." Whereupon the commissioners duly enacted an ordinance "that the attached proposition of the McKenzie Construction Company be and the same is hereby accepted, subject to proper and sufficient contract with adequate security in the judgment of the Commissioners be made."

Appellant, on August 7, 1925, entered into a contract with the city, the city executing same by its mayor, John W. Tobin, attested by its clerk, for the construction of the dam across Olmos creek, on the same date furnishing bond for the faithful performance of the contract with American Surety Company of New York, National Surety Company, United States Fidelity & Guaranty Company, and Fidelity & Deposit Company of Maryland, as sureties, and entered upon the construction of the dam. As the work progressed the city commissioners of San Antonio, upon estimates duly approved by Col. S. F. Crecelius, its flood prevention engineer, from time to time, paid unto appellant various amounts aggregating the sum of $352,541.68; each of such payments being authorized by ordinance duly enacted appropriating the money. The last of these payments was authorized by ordinance of February 14, 1927, wherein it was provided that the sum of $32,288.39 be appropriated out of the flood prevention fund to pay appellant "said payment to be without prejudice to the right of said McKenzie Construction Company to assert or prosecute any claims that said company may have against the City, and without prejudice to the right of the City to assert or prosecute any claims that the City may have against said McKenzie Construction Company." Previous to the enactment of this last ordinance the city commissioners also, on December 8, 1926, enacted an ordinance agreeing that "the turning over of the Roadway on the Olmos Dam to the City of San Antonio shall be without prejudice to the rights of either the contractor or of the City, under the contract between them for the construction of the Olmos Detention Dam."

Appellant instituted this suit on August 25, 1930, in Bexar county against the city of San Antonio and C. M. Chambers, its mayor, and Phil Wright, J. H. Rubiola, Paul M. Steffler, and Frank H. Bushick, its commissioners, as defendants, to recover the sum of $104,639.48,

alleged to be due it upon an express contract which it claims was entered into by virtue of the facts hereinabove set forth, for balance due under said contract, against which appellant alleged unauthorized charges were made by the city and the engineer, said sum further including costs alleged to have been arbitrarily withheld from appellant and to have been imposed upon it as a result of wrongful acts of the city and its engineer. By agreement of the parties the venue was changed to Nueces county, where trial was had, and, after nine weeks thereof, the court peremptorily instructed the jury to return a verdict for the defendants, which was done and judgment rendered thereon accordingly. Appellant duly excepted to the court's action in granting appellees' motion for peremptory instruction, and the bill of exceptions pertinent thereto discloses that the instruction was granted "because the Court was of the opinion that the contract sued upon by plaintiff was absolutely void and incapable of ratification, and that the doctrine of estoppel plead and invoked by plaintiff was not applicable."

It is urged with much force and persuasion by appellees that the judgment of the trial court should remain undisturbed for the reasons that: (a) The contract that appellant claims to have been made with the city was void because not made or authorized by valid ordinance as required by the city charter; (b) the contract was void because no provision was made, at or before the making thereof, for the payment of the debt attempted to be thereby created, as required by the constitution, the statute, and the city charter; and that (c) the contract being void, it could not be validated by showing ratification or estoppel. We shall discuss these questions in the order presented.

Section 20 of the Charter of the City of San Antonio provides that "no contract on the part of the City shall be made or authorized, nor any money appropriated from the funds of the City * * * otherwise than by ordinance." Section 40 of the same instrument provides that "any debt hereafter contracted by any officer of the City, or by any person on account of the City, the payment of which has not been previously provided for by ordinance duly adopted by the City Council, shall be absolutely null and void and uncollectible at law or in equity, and it shall be the duty of the City Attorney to plead this statute to defeat the enforcement of any such claim or debt." Section 53 of the same instrument, after providing for the borrowing of money on the city's credit and the issuance of bonds therefor for permanent public improvements, further provides that "no debt shall be contracted for the payment whereof such bonds or lot thereof are issued until such bonds or lot thereof shall have been disposed of and the proceeds paid into the City Depository or the contractor undertaking such public improvements shall agree to take said bonds in payment for the work to be performed; and no debt shall ever be created by said City·unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon." This last provision is but a reiteration of an ancient rule of public policy laid down by section 5 of article 11 of our State Constitution.

■ Appellees attack the validity of the ordinance hereinabove quoted accepting the proposal of appellant, on the grounds that the "proposition" therein mentioned was not in fact attached to the ordinance; that nothing was identified as being the proposition mentioned in the ordinance; and that the ordinance, being of itself incomplete, was insufficient and could not under any circumstances form the basis of a valid contract. Col. Crecelius, appellees'·engineer, who supervised the dam construction and who recommended to the city commissioners that appellant's proposal be accepted, testified at the trial that "after the proposal of McKenzie Construction Company was opened and the City Council took action with reference to it I took charge of it, etc." He further testified that the proposal was not attached to the ordinance. The record of this case discloses that appellant made but one proposal and that both the parties acted thereunder. If the proposal was opened and the city council took action thereon, as testified to by Crecelius, then the city council had full knowledge of its contents when it acted thereon. This court is cited no authority holding that, under such circumstances, the lack of actual physical attachment renders the ordinance void or invalid, and will not so hold. Moreover, should such be the law, then the testimony of Col. Crecelius, contradictory as it was, raised an issue which was within the province of the jury to determine.

■ Appellees further attack the ordinance accepting appellant's proposal on the ground that the city commissioners did not formally approve the bond executed and delivered by appellant. The record discloses that each of the four surety companies on appellant's bond were authorized to act as such sureties at the time the bond was executed. Under the provisions of our Revised Statutes, article 4970, we hold that no such formal approval was necessary. The United States Supreme Court has likewise so held in a similar case involving a similar statute. See United States v. Purcell Envelope Co., 249 U. S. 319, 39 S. Ct. 300, 63 L. Ed. 620.

■■ Before the contract was awarded to appellant, as hereinbefore stated, the qualified voters of the city of San Antonio had authorized the city to borrow $2,800,000 on its

credit and issue bonds therefor, and to expend the money on a general flood prevention program including the building of dams at and near the headwaters of the San Antonio river and creeks and tributaries thereof. At that time, according to one of the witnesses, "there was a great demand from the business interests to protect the downtown section from the floods on the Olmos which run into the river up around Brackenridge Park and there was a bond issue voted for that purpose." The Olmos creek was tributary to the San Antonio river, and the damming thereof was clearly and plainly contemplated when the bond issue was proposed, submitted, and carried; no other reasonable inference can be drawn and it was not necessary to specifically name the Olmos creek, it having been included as a tributary to the San Antonio river. The issuance and sale of the bonds were duly authorized by ordinance, due provision being made in the ordinance for the levying of taxes to discharge the same. Upon the sale of the bonds the proceeds thereof were deposited by the city in its "Flood Prevention Fund," remained under the control of the city, and thereupon became lawfully applicable to the building of the Olmos Dam, contract for which was subsequently let to appellant. Appellees' objection that no provision for interest and sinking fund was made at the time the contract was made cannot be entertained. Neither the provisions of the city charter nor of the State Constitution or statute were violated. McNeal v. City of Waco, 89 Tex. 88, 33 S. W. 322, 323; Berlin Iron-Bridge Co. v. City of San Antonio (Tex. Civ. App.) 50 S. W. 408.

The contract involved in this case was within the corporate power of the city to make; it was not prohibited by law nor was it ultra vires or against public policy; it was entered into by ordinance as prescribed by the city charter; the most serious objection that could be lodged to it, if at all, is that there was a mere irregularity in the making of it. The city accepted the benefits of the contract. It repeatedly recognized the contract by ordinances appropriating specific sums of money to pay appellant as construction progressed; it specifically recognized it in its ordinance of December 8, 1926, accepting the roadway on the dam. Such acts bind the city to performance of its obligations under the contract by ratification. Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291; City of Dallas v. Martyn, 29 Tex. Civ. App. 201, 68 S. W. 710.

Appellant's pleadings and the proof introduced thereunder in the court below were sufficient to entitle it to a determination of the issues involved by a jury, and we so hold.

Numerous assignments are presented to this court in this appeal; but, inasmuch as it becomes necessary to reverse the judgment of the court below on those discussed, no opinion is expressed thereon.

The judgment of the court below is accordingly reversed, and the cause remanded.

On Motion for Rehearing.

[7, 8] Appellees vigorously assail this court's original opinion herein and insist that we erred in holding that the McKenzie contract did not violate the Constitution, the city charter, or the statutes, notwithstanding no specific appropriation was made at the time of the making of the contract of any funds to pay the obligation of this particular contract. "To 'appropriate' is to allot, assign, set apart, apply in any way to the use of a particular person or thing for a particular purpose." 1 Words and Phrases, First Series, 466. None of the three instruments above mentioned requires such a specific appropriation. Had they so provided, however, when the money derived from the proceeds of the flood prevention bonds were deposited by the city in its "Flood Prevention Fund," they were, by virtue of the ordinance of December 10, 1923, mentioned in our original opinion, dedicated and appropriated to and for the particular municipal object and purpose of ameliorating flood conditions and the Olmos detention dam was a most essential unit in this program. The city commissioners became the trustees of this fund and could not lawfully divert it to any other purpose. There were funds in this special fund when the contract was made amply sufficient to discharge the city's obligation under the contract, and it will not be presumed that the city commissioners would attempt to make flood prevention contracts calling for payments in excess of this fund. Certainly there is no evidence in the record that they did so.

Our holding is charged with being in conflict with Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263, 265; City of Waco v. McNeill (Tex. Civ. App.) 29 S. W. 1109; McNeal v. City of Waco, 89 Tex. 88, 33 S. W. 322, 324; and Fourth National Bank v. City of Dallas (Tex. Civ. App.) 73 S. W. 841. These cases were carefully examined by this court before the original opinion herein was written. In the Noel Case the present Chief Justice of this court very emphatically states that: "There is no pretense that it was a cash transaction, based on money theretofore raised on bonds voted by the taxpayers, but it is provided that the debt of $13,000 shall be paid in 10 annual payments, evidenced by promissory notes in the sum of $1,300 each, and bearing interest at the rate of 6 per cent. per annum. The whole transaction was independent of, and without reference to, any sums that may have been realized from the sale of bonds. * * * Money may have been, and doubtless was, raised by the sale of bonds to erect garbage furnaces, and may have been expended for

that purpose, but the contract shows upon its face that it was never contemplated that the furnaces in question should be paid for out of it." In the McNeill Case, Chief Justice Fisher of the Third Court of Civil Appeals, after finding that "the petition failed to allege that at the time of the creation of the debt any provision was made by the city for its payment," states that "the evidence does not show that a fund was on hand by which the city could and would pay this indebtedness without the necessity of resorting to taxation for that purpose, nor are such facts pleaded." Justice Denman, speaking for the Supreme Court in the same case, approves the holding of Justice Fisher and very pertinently concludes that "the word 'debt,' as used in the constitutional provisions * * * means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation." In the Case Threshing Machine Company Case (Tex. Civ. App.) 218 S. W. 1, 3, suit was brought on warrants which, when made, became a burden on the future revenues of the county, but, as stated by the court, "it is not alleged that any special provisions were made for levying and collecting a tax for their payment." In the present case there were both pleading and proof that bonds had been duly voted for the purpose contemplated by the contract, that due provision had been made for their payment, and that at the date of the contract the money derived from the sale of the bonds, amply sufficient to discharge the obligation of the contract, was in a special fund within the immediate control of the city. The four cases cited by appellees announce sound and correct principles of law, but we fail to be impressed by the argument that we have conflicted therewith. They were decided on controlling facts and matters wholly different from those in the present case. The doctrine of "stare decisis" is properly applied only when the previous decision relied upon as controlling was founded upon a certain state of facts substantially the same as appears in the case in which the doctrine is invoked. This observation applies with equal force to appellees' contention that our opinion is in conflict with the Supreme Court's decision in American Construction Co. v. Seelig, 104 Tex. 16, 133 S. W. 429, with this court's decision in Vance v. City of Pleasanton, 261 S. W. 457, and with the First Court of Civil Appeals decision in Wagner v. Porter, 56 S. W. 560.

The contract and bond were executed upon printed forms prepared by the city, which forms, together with the "Notice to Contractors," "Instructions to Bidders," "General Conditions of the Agreement," and "Specifications," all also printed and furnished by the city and bound in pamphlet form comprising thirty-three consecutively numbered pages, was furnished by the city to all bidders, it being provided in the "Instructions to Bidders" that all these documents constituted a part of the contract. The second paragraph of the "Notice to Contractors" provides that the bidder must furnish suitable guaranty that he will enter into the contract and execute bond and guaranty "on the forms provided." Appellant complied with these instructions as to the submission of his proposal and upon the acceptance thereof by the city commissioners, as noted in our original opinion, their discretion in the matter was exhausted. There remained nothing to be done except to fill in the few blanks from data appearing in the accepted proposal and for the parties to affix their signatures to the contract provided by the city. The words used in the ordinance accepting the proposal "subject to proper and sufficient contract" can only, under the circumstances, be taken to mean and refer to the printed form of contract which the city had furnished and stipulated that the successful bidder must execute. The bond was likewise executed on the form provided by the city by sureties each of whom was authorized so to do by statute, as noted in our original opinion. Under the record herein as presented we cannot agree that the phraseology of the ordinance accepting appellant's proposal gave the commissioners the absolute right to veto by silence the bond. To so hold would, in our opinion, nullify and be at variance with the provisions of article 4970 of the Statutes.

The motion for rehearing is overruled.