CITY OF HOUSTON v. FINN.

No. 11118.

Court of Civil Appeals of Texas. Galveston.

March 20, 1941.

Rehearing Denied April 17, 1941.

R. R. Lewis, Geo. D. Neal, Morris D. Meyer, Spurgeon E. Bell, and Ed R. Campbell, all of Houston, for appellant.

Kayser, Liddell, Benbow & Butler, Frank A. Liddell, W. O. Huggins, Jr., and Jack Binion, all of Houston, for appellee.

MONTEITH, Justice.

This action was brought by appellee, A. C. Finn, to recover for architectural services alleged to have been rendered to appellant, City of Houston, in connection with an application to the Public Works Administration of the United States, hereinafter called PWA, for a grant to assist in constructing and furnishing a city hall for appellant City.

Appellee alleged that appellant by an ordinance had authorized its mayor to make an application to the PWA for aid in the construction and equipment of a city hall; that, acting through its mayor, it had orally employed him to render the usual and customary architectural services necessary to obtain a grant of this character and that, acting under said employment, he had performed all the services necessary therefor; that said mayor and city commissioners knew that the PWA required that an applicant for aid of this character must provide and maintain an architect, and that the city council knew of the existence of the agreement between its mayor and appellee, and had acquiesced in and ratified said agreement and had accepted such services and all the benefits thereof, and that appellant was estopped to deny the validity of said contract. Appellee specially pled that there was a general and uniform custom, which was well known to the city council of appellant City, that an architect's compensation for services rendered in obtaining a PWA grant was not due until after the grant had actually been made by the PWA and accepted by the applicant; that said grant was actually made to appellant by PWA and was accepted by resolution and ordinance of appellant City on or about October 13, 1937. He sought recovery for said services in the sum of $18,180, or in the alternative 1% of the total cost of the construction and furnishing of said city hall,

or in the alternative 1% of the total proposed cost of said building and equipment, or in the alternative the reasonable value of his services.

Appellant City answered by general demurrer, special exceptions and denials, and an affirmative defense of the two-year statute of limitation.

In answer to special issues submitted, the jury found, in effect:

1. That at the time of the conversation between the appellee, A. C. Finn, and Mayor Holcombe in August, 1935, it was the intention of the parties that the appellee, Finn, would render further service to the appellant, City of Houston, after the architectural data accompanying the application to the PWA had been prepared and before the grant had been made or refused by the PWA.

2. That at the time of the conversation in August, 1935, between A. C. Finn and Mayor Holcombe, it was the intention of the parties that any money to be paid Finn was contingent upon the making of a grant to the City by the PWA.

3. That at the time the city council passed the ordinance on September 4, 1935, a majority of the city council knew that appellee, Finn, had prepared the preliminary plans and sketches and other architectural data to accompany said application to the PWA.

4. That a majority of the city council knew on September 4, 1935, that the appellee, Finn, had prepared preliminary sketches and plans and other architectural data to accompany said application to the PWA at the request of Mayor O. F. Holcombe.

5. That at the time the city council passed the resolution on October 13, 1937, accepting the offer of a grant from the PWA, a majority of such city council knew that appellee, Finn, had prepared the preliminary sketches and plans and other architectural data accompanying the application to the PWA.

6. That a majority of the city council knew on October 13, 1937, that Finn had prepared the preliminary sketches and plans and other architectural data accompanying the application to the PWA at the request of Mayor Holcombe.

7. That there was a general custom in Houston during the years 1935 to 1937, inclusive, as to the amount of compensation to be paid an architect for preparing the preliminary plans and sketches and other architectural data accompanying the application to the PWA for a grant.

8. That such general custom was one per cent of the estimated cost of construction.

9. That at the time of the conversation between Finn and Holcombe in August, 1935, Holcombe and Finn knew of the existence of such general custom.

10. That at the time of the conversation between Finn and Holcombe in August, 1935, it was the intention of the parties to be governed by such general custom.

11. That at the time the city council passed the ordinance on September 4, 1935, a majority of the city council knew of the existence of such general custom.

12. That at the time the city council passed the resolution on October 13, 1937, accepting the grant, a majority of the city council knew of the existence of such general custom.

13. That there was a general custom in Houston during the years 1935 to 1937, inclusive, as to the time of payment to the architect of compensation for preparing the preliminary plans and sketches and other architectural data accompanying the application to the PWA for a grant.

14. That such general custom was that the architect was to be paid after the grant had been accepted by the applicant.

15. That at the time of the conversation between Finn and Holcombe during August, 1935, Holcombe knew of the existence of such general custom.

16. That at the time of the conversation between Finn and Mayor Holcombe in August, 1935, it was the intention of the parties to be governed by such general custom.

17. That at the time the city council passed the ordinance on September 4, 1935, authorizing the mayor to make application to the PWA for a grant, a majority of the city council knew of the existence of such general custom.

18. That at the time the city council passed the resolution on October 13, 1937, accepting the offer of a grant from the PWA, a majority of the city council knew of the existence of such general custom.

19. That pursuant to the conversation between Finn and Holcombe in August, 1935, Finn prepared and filed the preliminary plans and sketches and other architectural data accompanying the application to the PWA, with the intention that he was to be paid in money by the City of Houston for rendering such services.

20. That the preliminary plans and sketches prepared by the appellee, A. C. Finn, were not substantially the same plans and sketches prepared in 1928 by Bailey, Hedrick, Gottlieb and Finn.

21. That $18,181.81 if now paid in cash would fairly and reasonably compensate appellee for the services rendered to appellant in connection with filing the application to PWA for a grant.

Based on the answers to said special issues, judgment was rendered against appellant City in favor of appellee, Finn, for the sum of $18,180, appellee having filed a remittitur in the sum of $1.81.

The record shows that in August, 1935, the mayor of appellant City requested appellee to prepare the preliminary plans, specifications and architectural data necessary to accompany a PWA application for a grant of funds to be used by appellant City in connection with the erection and equipping of a proposed city hall; that appellee complied with said request and transmitted said plans and data, with the forms required by the PWA to the mayor of appellant City; these forms showed the total cost of the proposed project to be $1,818,180.

On September 4, 1935, appellant City passed an ordinance which authorized and empowered its mayor to make such application to the PWA for said grant, and directed the Public Works Director of the City to furnish such information pertaining to said grant as the PWA might reasonably request; the official forms of the PWA and the exhibits, which appellee as architect had theretofore prepared at the mayor's request, were attached to this proposed ordinance and were later attached to the application which was transmitted to the PWA. Later, appellee made a trip to the office of the State Director of the PWA in Fort Worth, and to the PWA office in Washington, D. C., in connection with said application.

On October 1, 1937, the PWA made a written offer to appellant City to contribute the sum of $818,180 to be used in connection with the construction and equipping of said city hall. This offer was duly accepted by appellant City by resolution of the city council dated October 13, 1937. Said grant was made on the application which had been prepared and signed by appellee as architect.

Appellee's plans were not used in connection with the erection of such city hall.

This action was filed on August 22, 1939.

Section 19 of Article 11 of the Charter of the City of Houston provides that no contract shall be entered into by the City until after an appropriation has been made therefor, nor in excess of the amount appropriated, and that all contracts, whenever practicable, shall be made upon specifications, and that no contract shall be binding upon the City unless it has been signed by the mayor and counter-signed by the comptroller, and the expenses thereof charged to the proper appropriation.

Section 19a in Article 11 of said Charter provides that no contract involving the expenditure of money in excess of $1,000 shall be entered into or executed by any officer of the City unless it be by authority of ordinance, and that no ordinance for the appropriation of money or for the making of any contract requiring the expenditure of money shall be passed by the council unless the comptroller has first certified that the money required therefor is in the treasury and unappropriated.

While it is the established law in this state that a municipality cannot be held liable for the breach of a contract, which is illegal because not made in conformity with its charter provisions, on the ground of estoppel, it is equally well established that a city may be estopped to deny the validity of a contract which it had authority to make but which was executed by an officer without authority or was entered into without the formalities required under its charter, and that where a city accepts the benefits accruing to it under such a contract it is bound to perform the obligations imposed upon it thereunder. Panhandle Construction Co. v. City of Spearman, Tex.Civ.App., 89 S.W.2d 1053, 1055; City of Longview v. Capps, Tex.Civ.App., 123 S.W. 160; Gussett v. Nueces County, Tex.Com.App., 235 S.W. 857; McKenzie Construction Co. v. City of San Antonio, Tex.Civ.App., 50 S.W.2d 349; City of Port Arthur v. Young, Tex.Civ.App., 37 S.W.2d 385; 30 Tex.Jur., 343.

Further, the Supreme Court of this state has laid down the rule, first in the case of City of San Antonio v. French, 80 Tex. 575, 576, 16 S.W. 440, 26 Am.St.Rep. 763, and later in the case of Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841, that while a municipality cannot be held liable under an express contract, illegal because not made in conformity with its charter provisions, it will be held liable on an implied contract for the reasonable value of the benefits which it may have received, on the

theory that common honesty and fair dealing require that a municipality should not be permitted to receive the benefits of money, property or services without paying just compensation therefor. In the Sluder case the court held that, under such circumstances, a private corporation would clearly be liable under an implied contract and that there could be no sound reason why the same obligation to do justice should not rest upon a municipal corporation.

In the case of Galveston County v. Gresham, Tex.Civ.App., 220 S.W. 560, 562, writ refused, suit was filed by an attorney for services rendered in connection with the construction of the Galveston seawall. Mr. Gresham, the attorney, was employed in conformity with a resolution passed by the commissioners court of Galveston County. The commissioners' court declined to pay for such services on the ground that they had no authority to make said contract. This court, in affirming the judgment of the trial court, held: "And if the commissioners' court thus had the broad power to construct this extension of the sea wall, its like authority to enlist the services of the appellee to that end would follow as a necessary implication; that being deemed essential to the exercise of the power and duty imposed upon it."

■ While it is uncontroverted that the express contract upon which appellee relies for recovery was not made in conformity with the Charter provisions of the City of Houston and is therefore unenforceable, the City of Houston unquestionably had the legal right to make an application to the PWA for a grant to be used in connection with the building of a city hall and to employ an architect to furnish the necessary services in connection therewith. The jury found, on sufficient evidence, that the services rendered by appellee were of the reasonable value of the amount claimed by appellee, and that they were rendered by him at the special instance and request of the mayor of appellant City, with the knowledge, consent and acquiescence of the majority of the city council, and that the services rendered were necessary under the rules of the PWA.

Under above authorities, appellant City, having received the benefits of the services rendered by appellee, is liable on an implied contract for the reasonable value of the services found by the jury to have been rendered by appellee, in the event appellee's cause of action therefor is not barred by the two-year statute of limitation (Article 5526, Vernon's Annotated Civil Statutes).

Appellant contends that, since appellee's cause of action is based upon an implied contract, it accrued at the time the alleged services were rendered and that therefore appellee's cause of action, if any, was barred by the two-year statute of limitation at the time his suit was filed. This contention cannot be sustained.

Appellee pled that appellant City, acting through its mayor, had agreed to pay him as compensation for the architectural services to be rendered by him under his alleged contract, if, as and when the PWA actually made a grant to the City of Houston in connection with the application filed; that his services as such architect were completed and accepted by the City on and after September 21, 1937, and that, after, on or about October 13, 1937, appellant became indebted to him in the sum of $18,180.00.

He further pled that there was a well known custom prevalent in Houston during the years 1935 to 1937, inclusive, with respect to the time of payment of compensation for architectural services rendered in connection with the obtaining of a grant from the PWA and that according to said custom the compensation due an architect in performing said duties was not due until, if, as and when the PWA actually made a grant to the applicant therefor and said grant was accepted.

The jury found, on sufficient evidence, in response to special issues submitted, that it was the intention of appellee and the mayor of appellant City that appellee should render any and all services to appellant after furnishing the preliminary plans, sketches and architectural data that actually accompanied the application to the PWA; that it was the intention of the parties that any money to be paid appellee was contingent upon the grant being made; that there was a general custom in existence in 1935 as to the time of payment of an architect's compensation in connection with a PWA grant, that the architect was to be paid after the grant had been accepted by the applicant, and that both the city council of appellant and appellee knew of the custom on both September 4, 1935, and on October 13, 1937, and intended for it to cover their agreement.

No objections or exceptions to the submission of the above issues or the evidence on which the answers thereto were based were brought forward or urged by

appellant in this appeal, and although appellant pled the two-year statute of limitation, no request was made for the submission of an issue with respect to the date compensation for services rendered by appellee was due.

■ It is the settled law in this state that limitation does not begin to run until the right or cause of action accrues, and the right or cause of action does not exist until facts exist which authorize the person asserting the claim to seek relief in a court of competent jurisdiction from the person due to make reparation. It involves both the existence of the right and facts sufficient to constitute a cause of action. Williams et al. v. Pure Oil Co. et al., 124 Tex. 341, 78 S. W.2d 929, and cited cases.

■ In the instant case the jury found, upon sufficient evidence, that the date of accrual of appellee's cause of action was the date of the acceptance of said PWA grant, found to be October 13, 1937. This action was filed on August 22, 1939. Under these facts appellee's claim was not barred by limitation at the time the suit was filed and the trial court did not err in overruling appellant's special exceptions or in refusing to instruct a verdict in favor of appellant.

It follows from above conclusions that the judgment of the trial court must be, in all things, affirmed.

Affirmed.