Jack W. LESTER, Jr., Appellant,

v.

FIRST AMERICAN BANK, BRYAN, TEXAS, Appellee.

No. 10–92–283–CV.

Court of Appeals of Texas, Waco.

Nov. 30, 1993.

A.W. Davis & Vaughan E. Waters, Davis & Davis, Bryan, for appellant.

Bill Payne & H. Clint Milner, Thornton, Payne, Watson & Kling, P.C., Bryan, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

Section 51.003 of the Texas Property Code provides that the defendant in a suit for a deficiency judgment following a non-judicial foreclosure can request the court to determine whether the property's fair market value at the date of foreclosure exceeded its sales price at the foreclosure sale. TEX.PROP. CODE ANN. § 51.003(b) (Vernon Supp.1993). If the court determines that its fair market value exceeded what it sold for, then the difference between the two amounts is offset against the deficiency. Id. § 51.003(c). Jack Lester, Jr. relied on section 51.003 when he was sued for a deficiency judgment by First American Bank. However, the court granted the bank a summary judgment on the ground that section 51.003, when applied to a deed of trust executed prior to the statute's effective date, violates the contract clause of the Texas constitution. See TEX. CONST. art. I, § 16.

## HAS THE QUESTION BEEN DECIDED?

Article I, section 16, of the Texas constitution provides: "No bill of attainder, ... or any law impairing the obligation of contracts, shall be made." Id. In November 1934 the Texas Supreme Court decided two cases dealing with this constitutional provision. See Travelers Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007 (1934); Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025 (1934).

In Marshall the Court held that article 2218b (Texas Moratorium Act) was unconstitutional because it impaired the obligation of contract. Article 2218b authorized courts to enjoin foreclosure sales granted under deeds of trust and to restrain execution sales under judgments. Marshall, 76 S.W.2d at 1009. Marshall is noteworthy because of the Court's discussion and interpretation of the contract clause's meaning when it was adopted in 1876 as part of the Texas constitution.

In Langever the Supreme Court declared that article 2218 (Texas Anti–Deficiency Judgment Law) also violated the contract clause. Like section 51.003, article 2218 allowed the court to determine whether the property's "actual value" at the time of foreclosure exceeded its foreclosure sales price and, if it did, to credit the difference against the deficiency. Langever, 76 S.W.2d at 1027. Thus, the significance of Langever is in the similarity of the legal effect of article 2218 and section 51.003, whose constitutionality is now under scrutiny.

First American Bank argues that, because of the statutes' similarity, the decision in Langever is controlling and requires a similar result here. Lester attempts to distinguish Langever on the facts, pointing out that it involved a judicial rather than a non-judicial foreclosure and that the mortgagee had already reduced the deficiency to a final judgment before article 2218 was enacted. Moreover, assuming that Langever is binding on this court, Lester questions its continuing validity as sound constitutional law in the light of three later United States Supreme Court decisions. See Gelfert v. National City Bank of New York, 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299 (1941); Honeyman v. Jacobs, 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972 (1939); Richmond Mortg. & Loan Corp. v. Wachovia Bank & T. Co., 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552 (1937). He

would have us "reevaluate" *Langever* on that basis.

Our first step will be to determine *Langever's* binding effect as legal precedent under the doctrine of stare decisis. Ultimately, we hold that *Langever* is not controlling authority in this case. Finally, we will examine the opinion in *Marshall*, as well as the three United States Supreme Court cases mentioned above, for an understanding of the meaning of the contract clause of the Texas constitution. Based upon our interpretation of the contract clause and the relevant caselaw, both federal and state, we will hold that section 51.003 passes constitutional muster. Accordingly, we will reverse the summary judgment and remand the cause for trial.

## PREAMBLE

■ As a preamble to our examination of *Langever's* binding effect, we briefly sketch the doctrine of stare decisis:

As originally conceived and as generally applied, the doctrine of stare decisis governs only the determination of questions of law and its observance does not depend upon identity of parties. After a principle, rule or proposition of law has been squarely decided by the Supreme Court, ... the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties.

*See Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964). The binding effect of a prior decision cannot be determined without reference to its important facts. *See Meyer v. Texas Nat. Bank of Commerce of Houston,* 424 S.W.2d 417, 419 (Tex.1968). In fact, the doctrine of stare decisis only applies if the facts on which the prior case is founded are substantially the same as those in the subsequent suit. *McKenzie Const. Co. v. City of San Antonio,* 50 S.W.2d 349, 353 (Tex.Civ. App.—San Antonio 1932, writ ref'd).

■ Dictum, which includes expressions of opinion on a point or issue not necessarily involved in the case, will not create binding precedent under stare decisis. *See Boswell v. Pannell,* 107 Tex. 433, 180 S.W. 593, 597 (1915); *Grigsby v. Reib,* 105 Tex. 597, 153

S.W. 1124, 1126 (1913). However, there are exceptions to the dicta rule for expressions of opinion on issues that may arise during a retrial and for points of such importance the upper court deems and states that a deliberate ruling on an unnecessary question is appropriate. *Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764, 773 (Tex.1964); *Parker v. Bailey,* 15 S.W.2d 1033, 1035 (Tex. Comm'n App.1929, holding approved).

Because stare decisis requires the Supreme Court in *Langever* to have "squarely decided" the "very point" now before us upon "substantially similar" facts, we first examine that decision and opinion in juxtaposition to the facts here.

## LANGEVER

The important facts in *Langever* are these. H.H. Miller obtained a deficiency judgment against Langever for $1,338.29, plus interest and costs, which ordered foreclosure of a second lien against Langever's real property. *Langever,* 76 S.W.2d at 1026. The court issued an order of sale under the deficiency judgment, and Miller purchased the property at the foreclosure sale for $25, leaving a deficiency judgment of approximately $1,450. *Id.* The judgment became final before the enactment of article 2218. *Id.* at 1035.

Relying on article 2218, Langever filed suit against Miller to have the court determine whether the actual value of the property at foreclosure, exclusive of all liens, exceeded its $25 sales price and, if so, to have the difference credited against the deficiency judgment. *Id.* at 1026. The trial court and the court of appeals both held that article 2218 was unconstitutional. *Id.* The Supreme Court declared article 2218 unconstitutional under both the contract clause and the separation-of-powers clause of the Texas constitution. *Id.* at 1035.

Contrast the facts in *Langever* with these. First American Bank held two promissory notes executed by Lester, each secured by a deed of trust on his real property. Lester executed the deeds of trust before the legislature passed section 51.003. When Lester defaulted on the notes, the trustee conducted

a non-judicial foreclosure sale under the deeds of trust after section 51.003 became effective. At the foreclosure sale the bank purchased the two tracts for $435,849 and applied that amount against the unpaid notes, leaving a total arrearage of $202,-782.33.

Later, the bank filed suit against Lester to obtain a deficiency judgment. Relying on section 51.003, Lester moved to have the jury determine whether the fair market value of the two tracts on the date of foreclosure exceeded their sales price and, if so, to have the difference offset against what he still owed on the two notes. First American Bank moved for a summary judgment on the ground that section 51.003, when applied to mortgages executed before its enactment, is unconstitutional under the contract clause of the Texas constitution. The court granted the motion and entered a summary judgment for the bank for the unpaid balance of both notes.

Looking at the facts side-by-side, one cannot reasonably argue that they are substantially similar. *Langever* dealt with a judicial foreclosure; the case before us involves a non-judicial foreclosure. One case involved a final judgment that established the amount of the deficiency; the other does not.

Next, consider the dissimilar legal questions. In *Langever* the Court had to determine the constitutionality of article 2218 when applied to a pre-existing final judgment. The facts in *Langever* did not present the question squarely before us—whether a statute substantially similar to article 2218 in its legal effect is unconstitutional when applied to a non-judicial foreclosure of a pre-existing mortgage. Yet, in discussing the legal effect of article 2218 on final deficiency judgments, the Court stated:

> It is obvious that the legal effect of this act is to cancel all deficiency judgments to the extent of the difference between the actual value of the property sold under foreclosure and the amount which it may have brought at such sale, provided, of course, an action is brought by the judgment debt-

or for such purpose, and the necessary proof of value made. *In the case of sales under deeds of trust without judicial foreclosure, the effect is the same, since the purpose of the law is to deny recovery of a deficiency judgment for any amount, save and except when the value of the property involved is less than the amount of the debt in satisfaction of which the sale under the deed of trust or mortgage may have taken place.* In the one instance a solemn judgment in legal effect is cancelled; in the other, judgment is denied to the same extent that it would be cancelled had a deficiency been previously entered.

*Id.* at 1028 (emphasis added).

■ The italicized language is dictum because, if this were the Court's only holding, it would not have decided the legal issue presented by the facts. *See Boswell,* 180 S.W. at 597; *Grigsby,* 153 S.W. at 1126. That both cases involve the same general subject matter—*i.e.,* so-called anti-deficiency statutes with similar legal effects—does not transform the dictum in *Langever* into binding precedent in this case. *See Eubanks v. State,* 203 S.W.2d 339, 342 (Tex.Civ.App.—Austin 1947, writ ref'd). Moreover, none of the exceptions to the dicta rule are applicable. *See Palestine Contractors, Inc.,* 386 S.W.2d at 773; *Parker,* 15 S.W.2d at 1035. Thus, the decision in *Langever* is not binding legal precedent in this case. *See Swilley,* 374 S.W.2d at 875; *McKenzie Const. Co.,* 50 S.W.2d at 353.

However, if *Langever* were legal precedent in this case, we could not alter or modify its holding or refuse to apply it even if its legal basis were suspect.[1] Only the Supreme Court could do that. *See Stark v. American Nat. Bank of Beaumont,* 100 S.W.2d 208, 212 (Tex.Civ.App.—Beaumont 1937, writ ref'd) (on rehearing); *Mitchell v. Town of Refugio,* 265 S.W.2d 261, 267 (Tex.Civ.App.—San Antonio 1954, writ ref'd).

We now turn to the question of whether section 51.003, when applied to a pre-existing

---

1. This is an example of dictum, an expression of opinion on an issue not necessarily presented by the facts before us. *See Boswell v. Pannell,* 107 Tex. 433, 180 S.W. 593, 597 (1915); *Grigsby v. Reib,* 105 Tex. 597, 153 S.W. 1124, 1126 (1913).

deed of trust, violates the contract clause of the Texas constitution.

## MARSHALL

In *Marshall* the Texas Supreme Court searched for the meaning of the contract clause in 1876, the date of its adoption in the Texas constitution. Quoting liberally from constitutional scholars, the Court first noted the permanency of the meaning of a constitutional provision once its meaning is determined:

> A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable.... *The meaning of the constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it.*

*Marshall,* 76 S.W.2d at 1011–12.

The federal and Texas contract clauses are virtually identical.[2] As a preface to its interpretation of the state provision, the Court stated this general rule: "[W]hen a ... constitutional provision, having a fixed and definite meaning as declared by the courts, is adopted, the interpretation previously given it is likewise adopted at the same time." *Id.* at 1012. It then conducted an "inquiry as to the meaning of the language used in the Federal and various State Constitutions, as generally understood and declared prior to and at the time we adopted [the contract clause] and incorporated it in our organic law in 1875–76." *Id.* Using United States Supreme Court decisions and scholarly commentaries as its source, the Court ultimately found the meaning of the Texas provision in the meaning of the federal provision:

> It is obvious from the foregoing that at the time the clause prohibiting the impairment of contracts was placed in the Texas Constitution in 1875–76, the language em-

ployed had a fixed and definite meaning in the jurisprudence of the country, the effect of which was that moratory legislation of almost every conceivable type was void. Since we adopted the contract clause without change, *it must be held that we likewise adopted the fixed and definite interpretation which had been given it by the courts generally....* The correctness of the conclusion just stated is consistent with the history of the subject in this state.

*Id.* at 1023 (emphasis added). The Court also noted that its own pre–1876 decisions were consistent with the interpretation of the federal clause. *Id.* at 1024.

What is evident in *Marshall* is that the Texas Supreme Court used the pre-1876 decisions interpreting the federal provision to establish the meaning of the contract clause at the time of its adoption in the Texas constitution, with but one exception. Citing the United States Supreme Court's decision in *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), which interpreted the federal provision as allowing a state to enact legislation under its police power as long as the effect on pre-existing contracts was "incidental," the Court stated that "the same rule of interpretation cannot be applied to the contract clause in our State Constitution."[3] *Marshall,* 76 S.W.2d at 1010–11. The Court reached this conclusion based upon section 29 of Article I of the Texas constitution, which excepts the entire Bill of Rights out of the "general powers of government," a limitation on the police power that does not appear in the federal constitution. *Id.* at 1011. But for this one exception, however, the two clauses have been generally accorded the same meaning and effect. 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 61 (1977). What offends one offends the other. Moreover, the Texas Supreme Court has not departed from a mirror-

---

2. "No State shall enter into any ... Law impairing the Obligation of Contracts...." U.S. CONST. art. I, § 10, cl. 1. "No bill of attainder, ... or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16.

3. *But cf. Texas State Teachers Ass'n v. State,* 711 S.W.2d 421, 425 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Davalina v. Albert,* 409 S.W.2d 616, 619 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.); *Biddle v. Board of Adjustment,* 316 S.W.2d 437, 440–41 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.).

image interpretation of the two clauses in any decision issued subsequent to *Marshall*. Thus, the Court used primarily federal precedent to establish the meaning of the contract clause at the time of its adoption in 1876.

One cannot dispute that, using its decision in *Marshall* as the basis for the meaning of the contract clause, the Texas Supreme Court in *Langever* declared a statute virtually identical in its effect to section 51.003 unconstitutional under the contract clause. In reaching its decision in *Langever,* the Court recognized the rule of "universal acceptation" that a legislature can change judicial methods and remedies for enforcing pre-existing contracts without violating the contract clause. *Langever,* 76 S.W.2d at 1028–29. However, the Court expressed little concern for the "superfine distinction" between legislation that unconstitutionally impairs the "obligation" and that which lawfully affects the "remedy." *Id.* at 1029.

Although the Court cited several United States Supreme Court cases defining the term "obligation of contract"—along with Texas caselaw, commentaries, and treatises discussing the distinction between impairing the obligation as opposed to affecting the remedy—none of the authorities dealt with the question of whether a statute similar to article 2218 affected the remedy or impaired the obligation. *Id.* at 1030–32. Accordingly, the Court had to extrapolate its holding, principally from caselaw in New Jersey and Arkansas, that article 2218 was unconstitutional under either concept. *Id.* at 1033. The Court featured this quote from federal precedent as underlying authority for its holding:

> It is no answer, that the acts of Kentucky now in question are regulations of the remedy, and not of the rights to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the [contract clause] as if they overturned his rights and interests.

*Id.* at 1031 (quoting *Green v. Biddle,* 21 U.S. 1, 5 L.Ed. 547 (1823)).

## SUBSEQUENT FEDERAL PRECEDENT

*Marshall* and *Langever* were both decided prior to the three United States Supreme Court decisions interpreting the federal contract clause. *See Gelfert,* 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299; *Honeyman,* 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972; *Richmond Mortg. & Loan Corp.,* 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552. Each of these federal decisions involved legislative enactments that, like article 2218 and section 51.003, allowed the court to determine whether the market value of foreclosed property exceeded its foreclosure sales price and, if so, to credit or offset the difference against the deficiency. *Id.* Moreover, in each case the United States Supreme Court answered the question in *Langever:* Did the act affect the remedy or impair the obligation of the pre-existing mortgage?

Speaking unanimously in each opinion, the United States Supreme Court held that the statute did not violate the contract clause of the federal constitution because the statute merely affected the remedy for enforcing the pre-existing mortgage. Rather than quote from each opinion, we believe excerpts from Justice Douglas' opinion in *Gelfert* capture the essence of the Court's reasoning in each case:

> The formula which a legislature may adopt for determining the amount of a deficiency judgment is not fixed and invariable. That which exists at the date of the execution of the mortgage does not become so embedded in the contract between the parties that it cannot be constitutionally altered.

*Gelfert,* 313 U.S. at 229–31, 61 S.Ct. at 901.

> [F]or about two centuries there has been a rather continuous effort ... to prevent the machinery of judicial sales from becoming an instrument of oppression. And so far as mortgage foreclosures are concerned numerous devices have been employed to safe-guard mortgagors from sales which will or may result in mortgagees collecting more than their due.

*Id.* at 231–33, 61 S.Ct. at 902.

> Mortgagees are constitutionally entitled to no more than payment in full. [Foot-

note omitted]. They cannot be heard to complain on constitutional grounds if the legislature takes steps to see to it that they get no more than that.... But there is no constitutional reason why in lieu of the more restricted control by a court of equity the legislature cannot substitute a uniform comprehensive rule designed to reduce or to avoid in the run of cases the chance that the mortgagee will be paid more than once. [Citation omitted]. Certainly under this statute it cannot be said that more than that was attempted.

．　　．　　．　　．　　．

The fact that men will differ in opinion as to the adequacy of any particular yardstick of value emphasizes that the appropriateness of any one formula is peculiarly a matter for legislative determination.... To hold that mortgagees are entitled under the contract clause to retain the advantages of a forced sale would be to dignify into a constitutionally protected property right their chance to get more than the amount of their contracts. [Citation omitted]. The contract clause does not protect such a strategical, procedural advantage. *Id.* at 231–35, 61 S.Ct. at 902–03.

### CONSTITUTIONALITY OF SECTION 51.003

A clear, irreconcilable conflict thus exists between *Langever* and the view of the United States Supreme Court on the meaning and reach of the contract clause. One cannot logically argue that the Texas Supreme Court set out in *Langever* to create such a conflict or to knowingly broaden the protection granted mortgagees under the Texas provision. As is evident in both *Marshall* and *Langever,* the Court was striving to harmonize the interpretation of the contract clause in the Texas constitution with that of the federal clause, rather than to create a conflict between the two. Unfortunately, the Court had to decide *Langever* without any help from directly-on-point caselaw, either state or federal, dealing with whether a statute like article 2218 affected the remedy or impaired the obligation. If *Langever* had been decided after the three United States Supreme Court cases, the answer would be simple and inescapable—the Court would have knowingly carved out greater protection for mortgagees under the state clause than is afforded them under the federal provision.

In *Marshall* the Court stated: "Since we adopted the contract clause without change, it must be held that we likewise adopted the fixed and definite interpretation which had been given it by the courts generally." *Marshall,* 76 S.W.2d at 1023. The United States Supreme Court interprets the federal clause as not voiding state enactments similar in legal effect to section 51.003. *See, e.g., Gelfert,* 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299. If the meaning of the Texas provision is to be generally interpreted by reference to decisions interpreting the federal constitution, and because there are no Texas decisions directly or implicitly holding that the state provision grants mortgagees greater protection than does the federal clause, then in our view the federal cases are entitled to persuasive weight in deciding the constitutionality of section 51.003.

The Texas constitution has its own independent vitality and can thus guarantee our citizens rights greater than those protected by the United States constitution. *Davenport v. Garcia,* 834 S.W.2d 4, 11, 15 (Tex.1992). Although not compelled to do so, we should nevertheless "borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful." *See id.* at 20. We cannot envision the Texas Supreme Court, now having the benefit of the three federal decisions, interpreting the contract clause as prohibiting the legislature from "[safeguarding] mortgagors from sales which will or may result in mortgagees collecting more than their due." *See Gelfert,* 313 U.S. at 231–33, 61 S.Ct. at 902. To conclude otherwise would be to "dignify into a constitutionally protected property right [a mortgagee's] chance to get more than the amount of [his] contracts." *Id.* at 233–35, 61 S.Ct. at 903. Accordingly, we hold that the contract clause of the Texas constitution does not void section 51.003 on the ground that it impairs the obligation of contract.

First American Bank is not entitled to a judgment as a matter of law in its suit for a deficiency judgment because a genuine fact issue exists on the fair market value of the real property on the date of foreclosure. *See* TEX.R.CIV.P. 166a(c). We therefore sustain point one, reverse the summary judgment, and remand the cause for a trial.