Opinion issued October 10, 2002

 













In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00460-CV






RICHARD J. SEGAL, JUDITH SEGAL, JOE FOGARTY, and NANCY
FOGARTY, Appellants


V.


EMMES CAPITAL, L.L.C., Appellee






On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 2000-06408






O P I N I O N

 Appellants, Richard J. Segal, Judith Segal, Joe Fogarty, and Nancy Fogarty
(collectively, "appellants"; by pairs, "the Segals" and "the Fogartys"), appeal a
judgment that granted a summary judgment motion in favor of appellee, Emmes
Capital, L.L.C. ("Emmes"), and denied the Segals' and the Fogartys' own summary
judgment motions. We affirm the judgment.

I. Standard of Review and Burden of Proof


 We follow the usual standard of review for an order granting one party's
summary judgment motion, and denying other parties' summary judgment motions,
under rule 166a(a) or (b). See Tex. R. Civ. P. 166a(a), (b); Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001) (summary judgment order not specifying
grounds); Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999) (order
granting and denying cross-motions for summary judgment); Science Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997) (standard of review and burden under
rule 166a(a), (b)).

II. Background


 The Fogartys and the Segals had ownership interests in Jojac/Sejac, Ltd., a
limited partnership ("the borrower"). To purchase three pieces of real estate in Texas,
the borrower executed a promissory note ("the note") for $6,850,000 in favor of
Emmes. (1) On the same day, the borrower secured the note by a first lien, conveyed by
a deed of trust ("the deed of trust") in Emmes's favor, on the three properties. Also
on the same day, appellants executed an unconditional guaranty agreement ("the
guaranty"), by which each agreed to be jointly and severally liable for, among other
things, "any liability of the Borrower to [Emmes] pursuant to any documents executed
and/or delivered in connection with any indebtedness of the Borrower to [Emmes],"
including the "debt secured" portion of the deed of trust. 

 The note matured in 1998, and the borrower defaulted. In about April 1999,
the borrower filed for Chapter 11 bankruptcy. Apparently because the bankruptcy
stayed enforcement actions against the borrower, Emmes sued the Segals and the
Fogartys in New York ("the New York suit") in April 1999 to recover on the
guaranty. See N.Y. C.P.L.R. § 3213 (McKinney 1992). In June and August of 1999,
the judge in the New York suit rendered two judgments for Emmes against all
appellants for a total of $4,609,076.77. In July 1999 and May 2000, respectively,
Emmes sought to domesticate and enforce the New York suit judgments in Texas by
a lawsuit styled Emmes Capital, L.L.C. v. Joe Fogarty et al., cause no. 1999-38061,
in the 281st District Court of Harris County, Texas ("the first Texas suit"). See Tex.
Civ. Prac. & Rem. Code Ann. § 35.001-.008 (Vernon 1997).


 On September 10, 1999, the bankruptcy judge entered an order, agreed to by
the borrower, Emmes, and appellants, modifying the automatic stay ("the agreed
bankruptcy order"). The agreed bankruptcy order provided, among other things, that,
if the borrower did not pay Emmes the remaining amount owing on the note by
December 3, 1999, the automatic stay would lift to allow Emmes to foreclose on the
deed of trust property on December 7, 1999. The agreed bankruptcy order continued:

 If the foregoing provisions [relating to the borrower] are complied with
in full, Emmes will forebear from pursuing collection activities under
the judgment granted to Emmes against Richard Segal and Joseph
Fogarty and their wives until December 3, 1999. The appeal filed by
Mr. and Mrs. Segal and Mr. and Mrs. Fogarty in the New York action
based on their guaranties on the Note, as well as the motion filed in
Texas challenging the domestication of the judgment on the Note and
the motion seeking to stay the enforcement of the judgment on the Note
shall be withdrawn within 10 days after this Order is entered. Mr. and
Mrs. Fogarty and Mr. and Mrs. Segal acknowledge validity of the
judgment entered in New York and waive any defenses they have to its
enforcement after December 3, 1999.


(Emphasis added.) 

 The borrower paid some, but not all, of the debt, and Emmes sold the three
deed-of-trust properties by nonjudicial foreclosure sale on December 7, 1999 in
Harris County. Emmes was the high bidder on all three properties, purchasing them
for $1,550,000 total. The parties and the record are unclear about how much
deficiency remained after the foreclosure sales, but a deficiency did remain.

 Later in December 1999 and in January 2000, respectively, the Fogartys and
the Segals counterclaimed against Emmes in the first Texas suit, alleging that the
three properties were sold for less than fair-market value and seeking a Texas-law
determination of value and an offset in that amount from any deficiency judgment. 
See Tex. Prop. Code Ann. § 51.005 (Vernon 1995) (allowing guarantor to challenge
fair-market value of property sold in nonjudicial foreclosure sale as prelude to
seeking offset from deficiency amount). The Segals expressly pled Property Code
section 51.005.

 On February 2, 2000, in Joe Fogarty & Nancy Fogarty v. Emmes Capital,
L.L.C., cause no. 20009-06408, in the 281st District Court of Harris County, Texas
("the second Texas suit"), the Fogartys sued Emmes for a determination of the three
properties' fair-market value and an offset in that amount from any deficiency
judgment. (2) The Segals intervened in the second Texas suit on March 1, 2000,
requesting the same determination as the Fogartys did and, again, expressly
referencing section 51.005. The parties agree that the first and second Texas suits
had substantially identical parties and issues. This appeal is from the final judgment
in the second Texas suit, and the remainder of this opinion concerns that suit's
procedural history. (3)

 Emmes moved for rule 166a(b) summary judgment on the ground that
appellants had allegedly waived their rights under section 51.005 (fair-market-value
determination) by express waiver in the guaranty. The Fogartys' summary judgment
response claimed that the guaranty's waiver of a section 51.005 determination (1)
violated Texas's public policy and (2) was invalid because the rights it waived did not
exist when the waiver was signed. (4) The Fogartys' response expressly stated that the
"issue presented is whether a guarantor's waiver of his right to determination of the
fair market value . . . pursuant to Tex. Prop. Code. Ann. § 51.005 (Vernon 1995) is
enforceable." The Fogartys admitted that their claim was for a determination
"pursuant to Tex. Prop. Code Ann. § 51.005." The trial judge did not rule on
Emmes's summary judgment motion at the scheduled hearing, but instead allowed
appellants additional time to file their own rule 166a(a) summary judgment motions.

 The Fogartys then amended their petition to add, for the first time, alternative
allegations that (1) the note, deed of trust, and guaranty provided that New York law
would apply to any deficiency action; (2) Emmes did not comply with New York
deficiency law; (5) and (3) Emmes was thus barred from seeking any deficiency
judgment. (6) The Fogartys moved for partial summary judgment on the same New-York-law ground as pled in their petition and, additionally, on the ground that the
foreclosure sale of two of the properties was void under Texas law for allegedly
having taken place in the wrong county. The Segals then moved for summary
judgment on essentially the same grounds as had the Fogartys. The only substantive
difference between the motions was that the Segals' motion asserted that the two
foreclosure sales were voidable, not void. (7) 

 Emmes responded to the Fogartys' summary judgment motion by arguing that
(1) Texas deficiency law, not New York law, applied to any deficiency action through
the choice-of-law provision in the deed of trust; (2) alternatively, if New York law
applied, (i) appellants waived any protections under New York deficiency law
through the agreed bankruptcy order and (ii) New York deficiency law did not apply
because the three properties were located outside New York and because the
judgments in the New York suit were not deficiency judgments; and (3) the
foreclosure sales for all three properties were properly held in Harris County. Emmes
did not respond to the Segals' summary judgment motion, but filed a supplemental
rule 166a(b) summary judgment motion after all appellants had moved for summary
judgment and two months before summary judgment was granted. Emmes's
supplemental motion asserted the same grounds that Emmes had asserted in its
response to the Fogartys' summary judgment motion. (8)

 The trial judge granted Emmes' summary judgment motion and denied
appellants' summary judgment motions without specifying grounds, effectively
overruling appellants' challenges to the deficiency remaining after the nonjudicial
foreclosure sale.

III. Appellants' Challenges to the Deficiency Judgment


A. Appellants' Challenges Under New York Law

 In the Fogartys' issue one and the Segals' issues one and two, appellants claim
summary judgment was improperly rendered because (1) New York deficiency law
applies, (2) Emmes did not comply with New York deficiency law because it did not
move to confirm the foreclosure sales timely, and (3) Emmes is thus barred from
seeking any deficiency judgment at all. (9) 

 We need not address the merits of appellants' challenges. One of Emmes's
supplemental summary judgment grounds was that, if New York deficiency law
applied, appellants waived any defensive use of that law by their concessions in the
agreed bankruptcy order. That order provided in pertinent part that all four individual
appellants "acknowledge validity of the judgment entered in New York and waive
any defenses they have to its enforcement after December 3, 1999." (Emphasis
added.) Appellants did not respond to this summary judgment ground below and,
more importantly, do not address this ground by argument or issue in their appellate
briefs. (10)

 Any error in granting summary judgment on the ground that the agreed
bankruptcy order waived any defensive use of New York deficiency law is thus
unassigned. Therefore, we may not consider whether judgment was properly
rendered on that ground. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993)
(holding appellate court cannot reverse judgment for reason not raised in point of
error). That unchallenged summary judgment ground would defeat any appellate
challenges concerning choice or application of New York deficiency law. See Fed'l
Deposit Ins. Corp. v. Attayi, 745 S.W.2d 939, 942 (Tex. App.--Houston [1st Dist.]
1988, no writ) (when order granting summary judgment does not state grounds,
appellant must show each of independent arguments alleged in summary judgment
motion is insufficient to support judgment). Accordingly, we overrule the Fogartys'
issue one and the Segals' issues one and two. (11)

B. Challenges to Appellants' Contractual Waiver of Rights Under Texas
Law (12)


 The guaranty, signed by each appellant as guarantor, contained the following
waiver:

 To the maximum extent permitted by applicable law, the Guarantor
[appellants] hereby waives all rights, remedies, claims and defenses
based upon or related to Sections 51.003, 5.004 and 51.005 of the Texas
Property Code, to the extent the same pertain or may pertain to any
enforcement of this Guaranty.


(Emphasis in original.) (13) Property Code Section 51.005 allows a guarantor to
challenge the fair-market value of property sold in a nonjudicial foreclosure sale as
a prelude to seeking an offset from the deficiency amount. See Tex. Prop. Code
Ann. § 51.005(b), (c) (Vernon 1995). (14) It is under section 51.005--the rights of
which appellants' expressly waived--that appellants sued and counterclaimed against
Emmes in both Texas suits. By separate issues, appellants claim their section 51.005
waiver is either unenforceable or void for various reasons.


 1. The Segals' Challenges

 a. Waived Challenges

 In issues four and five, respectively, the Segals claim (1) the guaranty's waiver
(and the deed of trust's parallel waiver) was ambiguous and not conspicuous and (2)
the waivers are void for violating Texas public policy.

 Neither of these grounds was asserted in the Segals' summary judgment
motion. No summary judgment reply of theirs appears in our record, either. Issues
four and five are the types of arguments that must be raised in a summary judgment
motion or response to be preserved. See McConnell, 858 S.W.2d at 341. Neither
issue was so preserved. Issue four was raised in the Segals' new trial motion, as was
a single statement that could be construed to be issue five, but we may not consider
a new trial motion's grounds when reviewing a summary judgment. See id.; cf. Morin
v. Helfrick, 930 S.W.2d 733, 738 (Tex. App.--Houston [1st Dist.] 1996, no writ)
(refusing to consider evidence offered to support new trial motion because that
evidence was not before trial judge at time of summary judgment hearing), overruled
on other grounds, Rizkallah v. Conner, 952 S.W.2d 580, 585 n.4 (Tex.
App.--Houston [1st Dist.] 1997, no writ). 

 Accordingly, the Segals' issues four and five are waived, and we overrule
them. See McConnell, 858 S.W.2d at 341.

 b. Fair-market value

 In issue three, the Segals argue genuine issues of material fact exist about the
three properties' values. (15)

 We have already held the Segals waived their challenges to the validity of their
section 51.005 waiver in the guaranty. Because of that waiver, it is inconsequential
whether the Segals raised a fact issue on the fair-market value of the three properties.

 We overrule the Segals' issue three.

 2. The Fogartys' Challenges

 In issue three, the Fogartys claim the guaranty's waiver (and the deed of trust's
parallel waiver) is unenforceable for (1) violating Texas's public policy and (2)
waiving a right not yet in existence. 

 a. Public Policy

 Section 51.005(b)'s purpose is to prevent mortgagees from recovering more
than their due at the guarantor's expense. See Long v. NCNB-Texas Nat'l Bank, 882
S.W.2d 861, 865 (Tex. App.--Corpus Christi 1994, no writ) (noting section 51.005
was designed to protect guarantors in deficiency suits arising out of nonjudicial
foreclosures on realty). That purpose does not necessarily translate into a policy so
fundamental to Texas jurisprudence that it cannot be waived contractually. The
Fogartys cite no case so holding. (16)

 The remainder of the Texas Property Code indicates that section 51.005's
protections can be waived contractually. In at least 11 other instances within the
Property Code, the Legislature expressly has stated that waivers of given rights,
obligations, liabilities, exemptions, etc. are void or voidable, either categorically or
under certain conditions. (17) That prohibitive language appears nowhere in section
51.005 or in chapter 51 of the Property Code. This omission indicates strongly that
the Legislature did not find the protections afforded in section 51.005 to be so
fundamental that they could not be waived contractually. See LaSalle Bank Nat'l
Ass'n v. Sleutel, 289 F3d 837, 841-42 (5th Cir. 2002) (applying same reasoning to
hold that guarantor could validly waive any offset rights under Texas Property Code
51.003).

 Furthermore, this Court's decision in Chase Manhattan Bank, N.A. v.
Greenbriar North Section II provides analogous support for our conclusion. See id.,
835 S.W.2d 720 (Tex. App.--Houston [1st Dist.] 1992, no writ). In Chase
Manhattan, we recognized that the New York and Texas deficiency laws were
materially different and that New York's requirement that a creditor confirm a sale
within 90 days is "not merely 'procedural,'" but instead is an integral part of the
creditor's deficiency claim. Id. at 726-27. The application of New York deficiency
law would have deprived the creditor in Chase Manhattan of any deficiency rights. 
Id. Nonetheless, as part of a choice-of-law analysis, we held that "no 'fundamental
policy' of Texas" was implicated or offended by applying the materially different
New York deficiency law that would, or could, effectively result in the creditor's total
loss of any deficiency rights. Id. If it did not offend the fundamental policy of Texas
to apply a foreign law, as the parties had contracted to do, that would effectively
destroy one party's deficiency rights because that party had not complied with that
law, then, by analogy, it does not offend the fundamental policy of Texas for a party
knowingly to waive its right to challenge the foreclosure sale price in a deficiency
suit. Cf. id.

 Accordingly, we overrule this part of the Fogartys' issue three.

 b. Waiver of a Right Not Yet in Existence


 The Fogartys next argue their contractual waiver is unenforceable because the
right waived--the right to seek a fair-market-value determination--did not exist
when the waiver was signed.

 The cases on which the Fogartys rely are distinguishable because they
generally concern waiver by action or inaction, i.e., implied waiver, not express or
contractual waiver. See Cent. Am. Life Ins. Co. v. Krause, 284 S.W.2d 192, 193-94
(Tex. Civ. App.--Amarillo 1955, no writ) (considering whether insurer, by drawing
premium, waived forfeiture of policy); Faubian v. Busch, 240 S.W.2d 361, 365-66
(Tex. Civ. App.--Amarillo 1952, writ ref'd n.r.e.) (considering waiver of right to
enforce deed restrictions by action or inaction). To waive a right impliedly, by acting
inconsistently with it or by not acting at all, the right must then be assertable. Not so
with a right expressly and knowingly waived by contract. Unless a statute or
fundamental public policy precludes waiver (and we have held it does not), one may
generally waive even constitutional or statutory rights, present or future, by contract. 
See Williams v. Williams, 569 S.W.2d 867, 869-70 (Tex. 1978) (holding surviving
spouse could contractually waive statutory and constitutional homestead rights);
Dillee v. Sisters of Charity of Incarnate Word Health Care Sys., 912 S.W.2d 307,
308-09, 311 (Tex. App.--Houston [14th Dist.] 1995, no writ) (holding employee
could contractually waive contract and constitutional right to due process and hearing
upon termination of employment); Beago v. Ceres, 619 S.W.2d 293, 295 (Tex. Civ.
App.--Houston [1st Dist.] 1981, no writ) (noting joint owner may contractually
waive absolute, statutory right to partition real property).

 We overrule the remainder of the Fogartys' issue three.






IV. Appellants' Challenges to the Texas Nonjudicial Foreclosure Procedure (18)


 The first property ("tract 1") encumbered under the deed of trust is located in
Harris County. The second property ("tract 2") is located in Polk County. The third
property, consisting of two separate pieces of land, is located in Harris County ("tract
3a") and in Montgomery County ("tract 3b"). None of the specifically described
properties overlaps into an adjoining county. It is undisputed that Emmes's trustee
posted notices in the properties' three respective counties that the sale would take
place in Harris County. (19) It is further undisputed that the trustee conducted the sale
of all properties solely at the Harris County courthouse. 

 In issue six, the Segals claim the trial judge erred in granting Emmes's motion
for summary judgment, and in denying their own motion for partial summary
judgment, because the foreclosure sale of tracts 2 and 3b was voidable for having
been held in Harris County, rather than in the counties in which those two tracts were
located. (20) The Segals claim the sale's location "chilled" the bidding process for tracts
2 and 3b, resulting in what they allege was an inadequate sale price for the two tracts. 
The Fogartys raise similar challenges in their issue two, although they claim the sale
of tracts 2 and 3b was void. All parties agree that Texas law applied to the
foreclosure sale of the three properties. (21)

A. The Parties' Interpretations of the Statute

 The controlling statute reads as follows:

 A sale of real property under a power of sale conferred by a deed of
trust or other contract lien . . . must take place at the county courthouse
in the county in which the land is located, or if the property is located
in more than one county, the sale may be made at the courthouse in any
county in which the property is located.


Tex. Prop. Code Ann. § 51.002(a) (Vernon 1995) (emphasis added). Section 6.4 of
the deed of trust contained a similar requirement. 


 Appellants construe the statute's "the land" and "the property" to mean only
one piece of property, regardless of how many pieces of property the deed of trust
covers. Under their construction, the creditor may select in which of multiple
counties to sell a single piece of property held under a deed of trust only when that
one piece of property lies in more than one county, i.e., only if the same piece of
property crosses the boundary between or among counties. If, however, the creditor
holds a deed of trust covering several, non-contiguous pieces of property, each of
which lies in only one county, and none of which lies in the same county, then the
creditor must sell each piece of property in the county in which it lies. Emmes's
trustee's foreclosure sale did not comply with appellants' interpretation of the statute. 

 In contrast, Emmes construes the statute's "the land" and "the property" to
mean all property covered by the same deed of trust. Under Emmes's construction,
if the creditor holds a deed of trust covering several, non-contiguous pieces of
property, each of which lies in only one county, and none of which lies in the same
county, the creditor may sell all pieces of property in any of the counties in which any
piece of property lies. Emmes's trustee's foreclosure sale complied with Emmes's
interpretation of the statute.

B. Discussion

 Statutory interpretation is a question of law. In re Canales, 52 S.W.3d 698,
701 (Tex. 2001). Our primary goal in interpreting a statute is to ascertain and
effectuate the Legislature's intent. Id. In doing so, we begin with the statute's plain
language before resorting to rules of construction. Helena Chem. Co. v. Wilkins, 47
S.W.3d 486, 493 (Tex. 2001); Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 865-66 (Tex. 1999). We begin with the plain language because we
assume the Legislature tried to say what it meant; therefore, its words should be the
surest guide to its intent. Fitzgerald, 996 S.W.2d at 866. In ascertaining legislative
intent, we do not confine our review to isolated statutory words, phrases, or clauses,
but instead we examine the entire act. Meritor Auto., Inc. v. Ruan Leasing Co., 44
S.W.3d 86, 90 (Tex. 2001); see Tex. Gov't Code Ann. § 311.011 (Vernon 1998)
(instructing to construe words and phrases in context). 

 1. The Plain Language of Section 51.002(a) is Ambiguous

 In interpreting section 51.002(a), we start with its plain language. See Wilkins,
47 S.W.3d at 493. Only if we find that section 51.002(a)'s plain language is
susceptible of two or more reasonable interpretations will we hold the statute is
ambiguous. See In re MO Pac. R.R. Co., 998 S.W.2d 212, 217 (Tex. 1999).

 Supporting Emmes's interpretation is the following logic based on the statute's
plain language:


 The words "real property," "land," and "property" can be
synonyms. (22)


 Accordingly, the use of the definite article "the" before "land"
and "property" means simply that those two terms refer back to
the earlier, synonymous term "real property" in the statute's
initial phrase.


 The context of "real property" in the initial phrase indicates that
"real property" can represent one or multiple tracts, as long as all
are encumbered under one deed of trust.


 Therefore, the term "the property," as with the earlier,
synonymous term "real property," can mean any number of
tracts--even non-contiguous tracts lying in different
counties--together comprising the "real property" encumbered
under the deed of trust. 

 Supporting appellants' interpretation is the following logic based on the
statute's plain language:

 The context of "real property" in the initial phrase indicates it can
represent one or multiple tracts.


 Similarly, "land" can represent one or multiple tracts. (23)


 "Property," however, is a singular noun, and its plural is
"properties." (24)


 Section 51.002(a) uses only the singular form "property," the
singularness of which is emphasized by the use of "the."


 Therefore, the use of "the property" is not simply referring back
to any and all tracts encumbered under a deed of trust and
subsumed by the earlier terms "real property" and "land," but
instead means only one tract that crosses county lines.


 The remainder of section 51.002 does not greatly clarify section 51.002(a)'s
language, although the use of "the sale" throughout the section seems to recognize
that only one sale need take place for each deed of trust, regardless of the number or
location of tracts of land encumbered under it (Emmes's interpretation). See Tex.
Gov't Code Ann. § 311.011 (instructing to construe words and phrases in context). 
The remainder of Property Code chapter 51 does not shed light on which party's
construction of the statute is correct.

 We hold that section 51.002(a)'s plain language can reasonably support either
party's interpretation. Accordingly, we hold that the statute is ambiguous. See In re
MO Pac. R.R. Co., 998 S.W.2d at 217. 

 2. The Code Construction Act Does Not Resolve the Ambiguity


 The Code Construction Act lists factors a court may consider in construing a
statute, whether or not the statute is ambiguous on its face. Tex. Gov't Code Ann.
§ 311.023 (Vernon 1998). When construing a statute, we may consider, among other
things, (1) the statute's objectives; (2) the circumstances under which the statute was
enacted; (3) the statute's legislative history; (4) common law, former law, and similar
provisions; (5) the consequences of the statutory construction; (6) administrative
agencies' construction of the statute; and (7) the title, preamble, and any emergency
provisions. Id. at § 311.023(1)-(7); Canales, 52 S.W.3d at 702. We presume the
Legislature intended a just and reasonable result and favored public over private
interests. Tex. Gov't Code Ann. § 311.021(3), (5) (Vernon 1998); Wilkins, 47
S.W.3d at 493.

 None of the above construction aids resolves the ambiguity of section
51.002(a)'s plain language. For example, the parties do not direct us to any
legislative history to clarify section 51.002(a)'s plain language. See Tex. Gov't
Code Ann. § 311.023(3) (allowing courts to consider legislative history). The Texas
Supreme Court has recognized that the evil the Legislature sought to remedy by
enacting the original 1889 statute (25) was oppressive and unfair foreclosure provisions,
including those allowing sales in counties other than those in which the land lay
because of the potential chilling effect on bidding, in private deed or lien contracts. 
See Wylie v. Hays, 263 S.W. 563, 566-67 (Tex. 1924) (recognizing same in holding
statute did not unconstitutionally impair contracts because statute was reasonable
exercise of power to protect public welfare); (26) see also Tex. Gov't Code Ann. §
311.023(1) (allowing court to consider statute's objective). Although the statutory
purposes recognized in Wylie support appellants' interpretation, the Wylie Court was
not considering situations in which the land encumbered under a deed of trust lay in
more than one county. Id., 263 S.W. at 564; see Bateman v. Carter-Jones Drilling
Co., 290 S.W.2d 366, 370 (Tex. Civ. App.--Texarkana 1956, writ ref'd n.r.e.)
(holding Wylie inapplicable to foreclosure sale, under deed of trust, of non-contiguous tracts of land located in different counties). In fact, there are beneficial
and detrimental consequences to both parties' interpretations. See Tex. Gov't Code
Ann. § 311.023(5) (allowing court to consider consequences of particular
construction). On the one hand, Emmes's interpretation would facilitate foreclosure
sales in an age when great distances are easily traversed, and when sophisticated
parties (as here) encumber several non-contiguous tracts of land under a deed of trust,
but would still give notice of the sale's location in each county involved; on the other
hand, appellants' interpretation would ensure no chilling effect on bidding from
selling a tract of land somewhere potentially far away.

 3. The Doctrine of Legislative Acceptance Resolves the Ambiguity

 When the Legislature re-enacts without material change an ambiguous statute
that has been given a long-standing judicial interpretation, we presume the
Legislature intended the statute to have the meaning ascribed by the courts. See, e.g.,
Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 187 (Tex. 1968); Cunningham
v. Cunningham, 40 S.W.2d 46, 50 (Tex. 1931); see also City of Austin v. S.W. Bell
Tel. Co., 45 Tex. S. Ct. J. 767, 773 (Tex. June 6, 2002) (same, concerning agency's
administrative interpretation).

 The only case on point is Bateman v. Carter-Jones Drilling Co., which
supports Emmes's interpretation of section 51.002(a). (27) See id., 290 S.W.2d 366
(Tex. Civ. App.--Texarkana 1956, writ ref'd n.r.e.). The appellants in Bateman
argued that the sale of one single tract of five tracts of land encumbered under a deed
of trust, which single tract lay in Gregg County, was void for having taken place in
neighboring Rusk County, where the four other tracts of land encumbered under the
deed of trust were situated. Id. at 370. The Gregg County tract was not contiguous
with any of the Rusk County tracts. Id. at 369. Construing a 1915 predecessor of
section 51.002(a), the pertinent language of which is substantively similar to that of
the current statute, (28) the Bateman court held that the sale of the Gregg County land
in Rusk County was valid. Id. at 370-71. The Bateman court reasoned as follows:

 It is the contention of plaintiffs that such statute provides for the sale of
lands in a different county from that in which it is situated only in case
the land is contiguous to the tract or tracts of land in the county in which
the sale is held. Some states have so construed a similar statute. In view
of the broad language used in our statute, we do not believe that to be a
proper construction. Surely the Legislature, when they [sic] made the
provision for the sale of land where the greater portion thereof is
situated and if in equal quantities the notice shall designate in which of
said counties the sale is to be made, did not anticipate that land could be
situated in a half-dozen or more counties and likely to be contiguous,
one tract to the other, making a complete chain back to the county in
which the sale was to be held. 


Id. at 370.


 Since Bateman, the Legislature has codified the civil statute as section
51.002(a) and amended it once. See Act of May 26, 1983, 68th Leg., R.S., ch. 576,
1983 Tex. Gen. Laws 3475, 3525, amended by Act of May 19, 1987, 70th Leg., R.S.,
ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174 (current version at Tex. Prop. Code
Ann. § 51.002(a) (Vernon 1995)). At neither time was section 51.002(a)'s language
changed in a material way that would have defeated Bateman's relevant holding. (29) 
We also note that, in addition to the codification and amendment to section 51.002(a)
noted above, the Legislature twice amended other sub-sections of section 51.002 after
Bateman, but in neither instance chose to change the language of sub-section (a). See
Act of July 3, 1984, 68th Leg., 2nd C.S., ch. 18, § 3(b), 1984 Tex. Gen. Laws 94, 95
(amending section 51.002(b), concerning giving notice of sale, and adding section
51.002(d), concerning filing sale notices); Act of April 15, 1993, 73rd Leg., R.S., ch.
48, § 5, 1993 Tex. Gen. Laws 97, 98-99 (amending sections 51.002(b) and 51.002(d)
and adding section 51.002(g), concerning notice-period computation).

 Since Bateman issued in 1956, the Legislature has codified and amended the
statute interpreted in Bateman, but has never substantively changed that statute. 
Accordingly, we presume that the Legislature intended to adopt Bateman's
interpretation. See, e.g., Marmon, 430 S.W.2d at 187.

 We hold Emmes's trustee properly conducted the sale of all tracts of land under
the deed of trust in a county in which sale was allowed by section 51.002(a). 
Therefore, the sale of tracts 2 and 3b was valid. 

 We overrule the Fogartys' issue two and the Segals' issue six.



V. Conclusion


 We affirm the judgment.




 Sam Nuchia

 Justice



Panel consists of Justices Nuchia and Smith. (30)


Justice Cohen, who retired from the Court before this opinion's issuance, not
participating.


Publish. Tex. R. App. P. 47.

APPENDIX




 Act approved Mar. 21, 1889, 21st Leg., R.S., ch. 118 § 1, 1889 Tex. Gen.
Laws 143, 143, reprinted in 9 H.P.N. Gammel, The Laws of Texas 1822-1897, at 1171, 1171 (Austin, Gammel Book Co. 1898)



"That all sales of real estate which may hereafter be made in this state under powers
conferred by any deed of trust or other contract lien shall be made in the county in
which such real estate is situated, notice shall be given as now required in judicial
sales, and such sales shall be made at public vendue, between the hours of 10 o'clock
a.m. and 4 o'clock p.m. of the first Tuesday in any month: Provided, That when such
real estate is situated in an unorganized county such sale shall be made in the county
to which such unorganized county is attached for judicial purposes, and where such
real estate is situated in two or more counties the sale may be made in any county
where any part of the real estate is situated, after notice as required in judicial sales
has been given in every county in which any part of such real estate is situated." 
(Emphasis added.)



 1895 Tex. Rev. Civ. Stat. 469-70 (appearing at former Tex. Rev. Civ. Stat.
art. 2369)



"All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated. Notice shall be given as now required in judicial sales, and such sales shall
be made at public vendue, between the hours of ten o'clock a.m. and four o'clock p.m.
of the first Tuesday in any month; provided, that when such real estate is situated in
an unorganized county such sale shall be made in the county to which such
unorganized county is attached for judicial purposes, and where such real estate is
situated in two or more counties the sale may be made in any county where any part
of the real estate is situated, after notice as required in judicial sales has been given
in every county in which any part of such real estate is situated." (Emphasis added.)


3. 1911 Tex. Rev. Civ. Stat. 773 (appearing at former Tex. Rev. Civ. Stat. art.
3759)


"All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated. Notice shall be given as now required in judicial sales; and such sales shall
be made at public vendue, between the hours of ten o'clock a. m. and four o'clock p.
m. of the first Tuesday in any month; provided, that, when such real estate is situated
in an unorganized county, such sale shall be made in the county to which such
unorganized county is attached for judicial purposes, and, where such real estate is
situated in two or more counties, the sale may be made in any county where any part
of the real estate is situated, after notice as required in judicial sales has been given
in every county in which any part of such real estate is situated." (Emphasis added.)


4. Act of March 10, 1915, 34th Leg., R.S., ch. 43, § 1, 1915 Tex. Gen. Laws 84
(appearing at former Tex. Rev. Civ. Stat. art. 3759)


"All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated, unless such real estate be situated in more than one county, in which event
notices as herein provided shall be given in both or all of such counties, providing
and giving notice that such sale will be made of such real estate in that one of said
counties in which the greater portion of the real estate may be situated; if equal
quantities of said land to be sold lie in different counties, said notice shall designate
in which of said counties the sale is to be made." (Emphasis added.)


5. Act of May 28, 1915, 34th Leg., 1st C.S., ch. 15, § 2, 1915 Tex. Gen. Laws
32, 32-33 (appearing at former Tex. Rev. Civ. Stat. art. 3759)


"All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated, unless such real estate be situated in more than one county, in which event, 
notices as herein provided shall be given in both or all of such counties, providing
and giving notice that such sale will be made of such real estate in that one of said
counties in which the greater portion of the real estate may be situated; if equal
quantities of said land to be sold lie in different counties, said notice shall designate
in which of said counties the sale is to be made." (Emphasis added.)


6. 1925 Tex. Rev. Civ. Stat. 1022-23 (appearing at former Tex. Rev. Civ. Stat.
art. 3810)


"All sales of real estate made under powers conferred by any deed of trust or other
contract lien shall be made in the county in which such real estate is situated. Where
such real estate is situated in more than one county then notices as herein provided
shall be given in both or all of such counties, and the real estate may be sold in either
county, and such notice shall designate the county where the real estate will be sold. 
Notice of such proposed sale shall be given by posting written notice thereof at least
21 days preceding the date of the sale at the courthouse door of the county in which
the sale is to be made, and if the real estate is in more than one county, one notice
shall be posted at the courthouse door of each county in which the real estate is
situated." (Emphasis added.)


7. Act of May 26, 1983, 68th Leg., R.S., ch. 576, 1983 Tex. Gen. Laws 3475,
3525 (current version at Tex. Prop. Code Ann. § 51.002(a) (Vernon
1995))


"A sale of real property under a power of sale conferred by a deed of trust or other
contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the
first Tuesday of a month. The sale must take place in the county in which the land
is located, or if the property is located in more than one county, the sale may be made
in any county in which the property is located. . . . ." (Emphasis added.)


8. Act of July 3, 1984, 68th Leg., 2nd C.S., ch. 18, § 3(b), 1984 Tex. Gen.
Laws 94, 95 (current version at Tex. Prop. Code Ann. §§ 51.002(b), (d))
(Vernon 1995))


Section 51.002 was amended, but in inapplicable ways: section 51.002(b) (giving
notice) was amended, and section 51.002(d) (filing notices) was added.


9. Act of May 19, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws
2174, 2174 (current version at Tex. Prop. Code Ann. § 51.002(a) (Vernon
1995))


"A sale of real property under a power of sale conferred by a deed of trust or other
contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the
first Tuesday of a month. The sale must take place at the county courthouse in the
county in which the land is located, or if the property is located in more than one
county, the sale may be made at the courthouse in any county in which the property
is located. . . . ." (Emphasis added.)


10. Act of April 15, 1993, 73rd Leg., R.S., ch. 48, § 5, 1993 Tex. Gen. Laws 97,
98-99 (current version at Tex. Prop. Code Ann. §§ 51.002(b), (d), (g)
(Vernon 1995))


Section 51.002 was amended, but in inapplicable ways: sections 51.002(b) and
51.002(d) were amended, and section 51.002(g) (computing notice period) was
added.
1. The note was signed by the borrower. Paragraph nine of the note stated, "This
note shall be governed by and interpreted in accordance with the laws of the
State of New York." The note contained no waiver provisions on which any
party relies.
2. The second Texas suit was originally filed in the 270th District Court of Harris
County, Texas, but was transferred to the 281st District Court, where the first
Texas suit had been filed, on February 9, 2000. Thereafter, both the first and
second Texas suits were considered by the judge of the 281st District Court.
3. The trial judge granted Emmes's summary judgment motion in the second
Texas suit on March 5, 2001, the same date that she entered final judgment in
the first Texas suit. (The judge apparently found the granting of summary
judgment in the second suit to be dispositive of the first suit's issues.) The trial
judge rendered final judgment in the second Texas suit on April 20, 2001. 
During status conference in this Court, and later memorialized by rule 11
agreement, the parties agreed as follows: the appeal of the first Texas suit
would be dismissed; any appellate issue for any party that could have been
asserted in the appeal of the first Texas suit could be asserted in the appeal of
the second Texas suit; and the parties could supplement the clerk's record in
the appeal of the second Texas suit with any required documents from the first
Texas suit.
4. The Segals state that they also filed a summary judgment response. Although
the Fogartys' response incorporated a response by the Segals by reference, the
Segals' summary judgment response is not in our record, their response does
not appear specifically to have been requested for inclusion on appeal, and the
Segals do not complain on appeal of the omission of their response.
5. New York deficiency law places the burden on the creditor to seek a deficiency
judgment within 90 days after the foreclosure sale on mortgaged property or
be barred from seeking a deficiency judgment at all:


 1. If a person who is liable to the plaintiff for the payment of the
debt secured by the mortgage is made a defendant in the action . . . the
final judgment may award the payment by him of the whole residue, or
so much thereof as the court may determine to be just and equitable, of
the debt remaining unsatisfied, after a sale of the mortgaged property
and the application of proceeds, pursuant to the directions contained in
such judgment, the amount thereof to be determined by the court as
herein provided.


 2. Simultaneously with the making of a motion for an order
confirming the sale, provided such motion is made within ninety days
after the date of the consummation of the sale by delivery of the proper
deed of conveyance to the purchaser, the party to whom such residue
shall be owing may make a motion in the action for leave to enter a
deficiency judgment . . . . Upon such motion the court . . . shall
determine . . . the fair and reasonable market value of the mortgaged
premises . . . and shall make an order directing the entry of a deficiency
judgment. Such deficiency judgment shall be for an amount equal to the
sum of the amount owing by the party liable as determined by the
judgment with interest, plus the amount owing on all prior liens and
encumbrances with interest, . . . less the market value as determined by
the court or the sale price of the property whichever shall be the higher.


 3. If no motion for a deficiency judgment shall be made as herein
prescribed the proceeds of the sale shall regardless of amount be
deemed to be in full satisfaction of the mortgage debt and no right to
recover any deficiency in any action or proceeding shall exist.


 N.Y. Real Prop. Acts § 1371 (McKinney 1979) (emphasis added).
6. The Segals did not amend their intervention plea to assert similar allegations
under New York law. However, we may presume the parties tried by consent
any New York claims/defenses with respect to the Segals because the Segals
moved for summary judgment on the same New-York-law grounds as the
Fogartys had pled and Emmes did not object or specially except. See Roark v.
Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1990) (trial by consent
of unpled matters applies in summary judgment context).
7. The Segals' argument under that summary judgment ground once used the term
"void," but the ground itself and the rest of the supporting argument concerned
whether the sales were voidable.
8. In the second Texas suit, with one exception, the parties filed summary
judgment motions and responses that did not themselves state any grounds, but
that instead incorporated by reference equivalent motions or responses from
the first Texas suit. Normally, summary judgment grounds must be in the
motion itself, not in an attached brief or evidence, and no special exception
would be required to preserve an appellate complaint about a total lack of
grounds in the motion. See McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 342 (Tex. 1993). However, all parties used the incorporation-by-reference procedure below without objection, and, more importantly, no party
complains on appeal of any other party's use of the incorporation-by-reference
procedure.
9. The Fogartys also claim the trial judge erred in denying their partial summary
judgment motion on the same grounds.
10. The only "waiver" grounds appellants challenge on appeal concern waivers by
contract, not by the agreed bankruptcy order.
11. For the same reason, we overrule the Segals' issue three to the extent that that
issue asserts that New York deficiency law applied to the determination of the
properties' fair-market value.
12. We do not consider whether the Texas contractual-waiver issues urged by
appellants and discussed in this section III, B could be rendered moot by the
unchallenged summary judgment ground discussed in preceding section III, A
(waiver by agreed bankruptcy order): Emmes urged that unchallenged
summary judgment ground against only appellants' New-York-law claims and
defenses, not against their Texas-law claims and defenses. We thus express no
opinion about whether the agreed bankruptcy order could in any way affect the
Texas contractual-waiver issues discussed in this section III, B.
13. The deed of trust contained a parallel waiver, but that document was signed by
the borrower, not appellants:


 To the maximum extent permitted by applicable law, [the borrower]
hereby waives all rights, remedies, claims and defenses based upon or
related to Sections 51.003, 5.004 and 51.005 of the Texas Property
Code, to the extent the same pertain or may pertain to any enforcement
of this Deed of Trust.


 (Emphasis in original.)
14. (b) The guarantor may bring an action in the district court in the county in
which the real property is located for a determination of the fair market value
of the real property as of the date of the foreclosure sale. The suit must be
brought not later than the 90th day after the date of the foreclosure sale or the
date the guarantor receives actual notice of the foreclosure sale, whichever is
later. The fair market value shall be determined by the finder of fact . . . .


 (c) If the finder of fact determines that the fair market value is greater than
the sale price of the real property at the foreclosure sale, the persons obligated
on the indebtedness, including guarantors, are entitled to an offset against the
deficiency in the amount by which the fair market value, less the amount of any
claim, indebtedness, or obligation of any kind that is secured by a lien or
encumbrance on the real property that was not extinguished by the foreclosure,
exceeds the sale price. If no competent evidence of fair market value is
introduced, the sale price at the foreclosure sale shall be used to compute the
deficiency.


 Tex. Prop. Code Ann. § 51.005(b), (c) (Vernon 1995).
15. The Segals did not assert this argument in their summary judgment motion. 
However, this argument may be raised for the first time on appeal because it
concerns whether Emmes, as movant, proved its entitlement to summary
judgment as a matter of law. See McConnell, 858 S.W.2d at 343 (non-movant
who does not respond to motion may nonetheless argue on appeal that
motion's grounds were legally insufficient). Accordingly, we address the
Segals' issue three. 
16. The Fogartys rely on Lester v. First American Bank, Bryan, Texas, but that
case does not support them. See id., 866 S.W.2d 361 (Tex. App.--Waco 1993,
writ denied). The Lester court indicated that the purpose of statutes like
section 51.005 was to safeguard mortgagors. See id. at 367. However, the
court did not hold that that purpose represented a policy so fundamental that
the statute's rights could not be waived. See id. at 367.
17. See Tex. Prop. Code Ann. § 28.006(a) (Vernon 2000) (concerning payment
to contractors and subcontractors); id. § 54.043(b) (Vernon 1995) (concerning
residential landlord's lien); id. § 62.022(a) (Vernon Supp. 2002) (concerning
broker's lien on commercial real estate); id. § 70.410 (Vernon Supp. 2002)
(concerning agricultural liens); id. § 91.006(b) (Vernon Supp. 2002)
(concerning landlord's duty to mitigate damages); id. § 92.008(g) (Vernon
1995) (concerning interruption of utilities in residential tenancies); id. §
92.0081(j) (Vernon 1995) (concerning removal of property and exclusion of
residential tenant); id. § 94.003 (Vernon Supp. 2002) (concerning
manufactured-home tenancies); id. § 94.202(b) (Vernon Supp. 2002)
(concerning landlord's duty to mitigate damages upon termination, eviction,
or foreclosure in manufactured-home tenancies); id. § 221.041(c) (Vernon
1995) (concerning purchaser's right to cancel timeshare-purchase contract); id.
§ 222.008(a) (Vernon 1995) (concerning purchaser's right to cancel
membership-camping contract).
18. We do not consider whether the Texas foreclosure issues discussed in this
section IV could be rendered moot by the unchallenged summary judgment
ground discussed in the preceding section III, A (waiver by agreed bankruptcy
order): Emmes urged that unchallenged summary judgment ground against
only appellants' New-York-law claims and defenses, not against their Texas-law claims and defenses. We express no opinion about whether the agreed
bankruptcy order could in any way affect the Texas foreclosure issues
discussed in this section IV. We further note that no instrument signed by
appellants expressly waived their rights under Texas Property Code section
51.002, the procedural foreclosure statute at issue in this section IV.
19. No one claims these notices were deficient, other than that they called for sale
solely in Harris County.
20. To the extent that the Segals' appellate briefs argue the foreclosure sale was
void in part, that argument is waived because it was not asserted as a summary
judgment ground below. See McConnell, 858 S.W.2d at 341.
21. Moreover, the deed of trust provided that New York law applied "
except to the
extent of procedural and substantive matters relating only to the creation,
perfection and foreclosure of liens, and enforcement of rights and remedies
against the mortgaged property, which matters shall be governed by the laws
of the state of Texas." (Emphasis added.)
22. See Merriam Webster's Collegiate Dictionary 653, 935, 973 (10th ed.
1993).
23. See Merriam Webster's Collegiate Dictionary 653 (10th ed. 1993) (not
distinguishing between plural and singular meaning of term).
24. See Merriam Webster's Collegiate Dictionary 935 (10th ed. 1993).
25. Act approved Mar. 21, 1889, 21st Leg., R.S., ch. 118 § 1, 1889 Tex. Gen. Laws
143, 143, reprinted in 9 H.P.N. Gammel, The Laws of Texas 1822-1897, at
1171, 1171 (Austin, Gammel Book Co. 1898), amended by and re-enacted in
1895 Tex. Rev. Civ. Stat. 469-70, amended by and re-enacted in 1911 Tex.
Rev. Civ. Stat. 773, amended by Act of March10, 1915, 34th Leg., R.S., ch. 43,
§ 1, 1915 Tex. Gen. Laws 84, amended by Act of May 28, 1915, 34th Leg., 1st
C.S., ch. 15, § 2, 1915 Tex. Gen. Laws 32, 32-33, amended by and re-enacted
in 1925 Tex. Rev. Civ. Stat. 1022-23, amended and codified by Act of May 26,
1983, 68th Leg., R.S., ch. 576, 1983 Tex. Gen. Laws 3475, 3525, amended by
Act of May 19, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174,
2174 (current version at Tex. Prop. Code Ann. § 51.002(a) (Vernon 1995)).
26. The Texas Supreme Court reasoned as follows:


 In the light of what has been observed, it is thought that the provision of
the Texas statute, which makes it necessary for the sale in this state to
take place in the county where the land lies, being the one in question in
this case, is calculated to be a wise regulation and one that is for the
public welfare. The size and extent of the state of Texas furnish so wide
a range as to place of sale that, if the matter be left without regulation,
provisions can be readily made in any mortgage or deed of trust that will
render the preservation of the mortgagor's rights at a sale extremely
inconvenient, if not impossible, and that, because of the remoteness and
inaccessibility of the land and of the records of title to the property, are
calculated to destroy bidding, in that strangers to the land and its
possession and title will not ordinarily be willing to purchase. 
Moreover, the provision in this statute as to the place of sale does not
stand alone, but is and should be considered as an integral part of
regulations which in their entirety require, as already observed, notice,
sale in the county where the land lies, customary days and hours, and
public auction, and accentuate the beneficial effect of the whole scheme,
which, to say the least, is materially aided by the regulation as to place
of sale. These provisions reasonably tend to assist in guaranteeing that
mortgages and deeds of trust shall not have the effect of absolute
conveyances, but shall have that of security only.


 Wylie v. Hays, 263 S.W.2d 563, 567 (Tex. 1924).
27. The Bateman court relied on Lewis v. Dainwood, 130 S.W.2d 456 (Tex. Civ.
App.--San Antonio 1939, writ ref'd) to support its holding on place of sale. 
See Bateman v. Carter-Jones Drilling Co., 290 S.W.2d 366, 370-71 (Tex. Civ.
App.--Texarkana 1956, writ ref'd n.r.e.). However, it is unclear from the
Lewis opinion whether that court was considering one tract of land that crossed
county lines or two non-contiguous tracts of land lying in adjacent counties. 
See Lewis, 130 S.W.2d at 456, 457. Therefore, we cannot say that Lewis is on
point.
28. Compare Act of March 10, 1915, 34th Leg., R.S., ch. 43, § 1, 1915 Tex. Gen.
Laws 84 (former Tex. Rev. Civ. Stat. art. 3759) (considered in Bateman) with
Tex. Prop. Code Ann. § 51.002(a) (Vernon 1995) (considered here). The
opinion's Appendix sets out the language of each predecessor statute to current
section 51.002(a), including that of the predecessor statute interpreted in
Bateman.
29. The only substantive modification to section 51.002(a) after Bateman does not
affect Bateman's pertinent holding. See Act of May 26, 1983, 68th Leg., R.S.,
ch. 576, 1983 Tex. Gen. Laws 3475, 3525 (for deed-of-trust real estate lying
in more than one county, allowing trustee's sale in any county in which land
lay (etc.), rather than in the county in which greatest amount of land lay, as the
1915 statute interpreted by Bateman had provided), amended by Act of May
19, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174
(same); see also 1925 Tex. Rev. Civ. Stat. 1022-23 (making same change
before Bateman). Upon codification, the Legislature also replaced the term
"real estate" with the terms "real property," "land," and "property," but this
change was neither material nor substantive. First, the codification was not
intended to render a substantive change. See Tex. Prop. Code Ann. §
1.001(a) (Vernon 1984) (no substantive change intended in codification). 
Second, the terms "real property," "land," "property," and "real estate" can be
synonyms. See Merriam Webster's Collegiate Dictionary 653, 935, 973
(10th ed. 1993). Third, the rare times that the Legislature did use the term
"land" in two of the statute's pre-codification versions, the context clearly
shows the Legislature intended that term to mean "real estate." See Act of
March 10, 1915, 34th Leg., R.S., ch. 43, § 1, 1915 Tex. Gen. Laws 84 (text in
Appendix); Act of May 28, 1915, 34th Leg., 1st C.S., ch. 15, § 2, 1915 Tex.
Gen. Laws 32, 32-33 (text in Appendix). Fourth, other than those two pre-codification uses of the term "land," the Legislature consistently used the term
"real estate" in the pre-codification statutes. See Act approved Mar. 21, 1889,
21st Leg., R.S., ch. 118 § 1, 1889 Tex. Gen. Laws 143, 143, reprinted in 9
H.P.N. Gammel, The Laws of Texas 1822-1897, at 1171, 1171 (Austin,
Gammel Book Co. 1898), amended by and re-enacted in 1895 Tex. Rev. Civ.
Stat. 469-70, amended by and re-enacted in 1911 Tex. Rev. Civ. Stat. 773,
amended by Act of March10, 1915, 34th Leg., R.S., ch. 43, § 1, 1915 Tex. Gen.
Laws 84, amended by Act of May 28, 1915, 34th Leg., 1st C.S., ch. 15, § 2,
1915 Tex. Gen. Laws 32, 32-33, amended by and re-enacted in 1925 Tex. Rev.
Civ. Stat. 1022-23, amended and codified by Act of May 26, 1983, 68th Leg.,
R.S., ch. 576, 1983 Tex. Gen. Laws 3475, 3525, amended by Act of May 19,
1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174 (current
version at Tex. Prop. Code Ann. § 51.002(a) (Vernon 1995)). We thus doubt
the Legislature intended to change the statute's substantive meaning merely by
replacing the term "real estate" with synonyms upon codification.
30. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, sitting by assignment.